```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


CHEVRON USA, INC.                              CIVIL ACTION

VERSUS                                         NO: 03-2027

AKER MARITIME INC, ET AL                       SECTION: "J" (2)
```

**ORDER AND REASONS**

Before the Court is a **Motion for Attorneys' Fees, Indemnity, and Costs (Rec. Doc. 616)** filed by Aker Maritime Inc, Technip Offshore Engineering, Inc., Technip Offshore Inc, Technip Offshore Moorings, Inc. (collectively "Aker"). The motion is opposed by Oceaneering International Inc. ("Oceaneering") **(Rec. Doc. 617)**. Aker filed a reply memorandum **(Rec. Doc. 620)**. Oceaneering filed a Sur-Reply **(Rec. Doc. 624)**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

On November 2, 2010, this Court concluded that Oceaneering must indemnify Aker under the provision of the Chevron-Oceaneering agreement (Rec. Doc. 607). Aker then filed the instant motion against Oceaneering, requesting indemnity in the amount of $1,070,026.05, and attorneys' fees and expenses in the amount of $992,217.15, for a total award of $2,062,243.20.

**THE PARTIES' ARGUMENTS:**

**Indemnity**

According to a jury verdict issued on June 20, 2008, the Aker defendants were found to have comparative fault of 35%. CAMC and Oceaneering were each found to have comparative fault of 5%.[1]  The total jury award amounted to $2,968,526.42, leaving the Aker defendants responsible for $1,038,984.25 and CAMC responsible for $148.426.32.  The Court also awarded pre- and post-judgment interest, which totaled $360.811.50 with respect the Aker Defendants share and $51,544.73 with respect to CAMC's share of the judgment.

On March 18, 2009, while the case was on appeal in the United States Fifth Circuit, Chevron settled with the Aker Defendants and CAMC for a total of $1,250,000. With respect to Aker and CAMC's joint settlement with Chevron, the parties did not specify amounts attributable to each of the defendants.  As a consequence, Aker and Oceaneering disagree over what percentage of the settlement amount was paid to settle Chevron's claims against CAMC.  Oceaneering owes no indemnity obligation to CAMC,

---

[1] The two affiliated entities–Aker and CAMC–were represented by the same counsel. It is undisputed that CAMC is not entitled to indemnity and that time and expenses incurred in the defense of CAMC are not recoverable.

2

only Aker, and therefore is interested in maximizing the proportion of the settlement attributable to CAMC.

Aker contends that it is reasonable to estimate that 90% of the $199,971.05 judgment against CAMC was paid to settle with Chevron, since counsel for Aker and CAMC reasonably believed at the time of the settlement that the judgment against CAMC would likely withstand appeal and given that settling parties generally receive a discount for paying the settlement rather than proceeding with further litigation.  Therefore, Aker contends that CAMC paid $179,973.95 of the $1,250,000.00 settlement, and the remaining $1,070,026.05 was paid to settle on behalf of Aker.

By contrast, Oceaneering contends that it is reasonable to estimate that CAMC paid 100% of the total damage award ($199,971.05) to settle the claims against it, since neither Aker nor CAMC specified the amount attributable to each Defendant in the settlement demand. As such, Oceaneering submits that 100% of the judgment against CAMC should be deducted from the $1,250,000.00 settlement with Chevron, thereby reducing the amount of indemnity owed to Aker to $1,050,028.95. Oceaneering argues that Aker's proposed 90%-figure is arbitrary and unsupported.

**Attorney's fees and Costs**

Aker requests a total amount of $992,217.15 for attorney's fees and expenses.  In support, Aker argues that its counsel's

low hourly billing rates are more than reasonable and should not be subject to challenge. Aker admits that it cannot recover amounts expended in pursuit of contractual indemnity from Oceaneering. Thus, Aker has not sought reimbursement of any litigation expenses or attorneys' fees incurred after March 18, 2009, the date of Aker's settlement with Chevron. Aker further provides an affidavit arguing that pre-settlement time and expense pursuing contract claims against Oceaneering was *de minimis,* and likely consisted of no more than twenty-five hours. Aker contends that the facts and issues are sufficiently intertwined to allow for complete recovery of all amounts expended and requests judgment in its favor for the entirety of its expenses and costs, whether taxable or not.

Oceaneering asks this Court to award Aker no more than $435,824.58 in costs and attorneys' fees. Oceaneering submits that a review of the Johnson factors warrants a downward adjustment of the lodestar. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds, Blanchard v. Bergeron, 489 U.S. 87, 90 (1989).

First, Oceaneering avers that the time billed by Aker's counsel was excessive because, among other things, Aker seeks ten attorneys' fees while only four of them were attorneys of record. Second, Oceaneering contends that Aker failed to properly document and prove the hours expended by counsel. Oceaneering

4

argues that the time (372 hours) and litigation expenses ($67,502.00) relative to the contractual claims against Oceaneering reflected in the drafting and filing these briefs should be excluded. Oceaneering also argues that the time (163.5 hours) and litigation expenses ($29,117.00) incurred in pursuing non-recoverable claims against parties such as Lone Star and Tech OFCO should be deducted from the lodestar. Further, Oceaneering requests that the lodestar amount be reduced by an additional 50% representing the time and expenses associated with the defense of CAMC because there is no question that work performed on behalf of Aker was also performed on behalf of CAMC. Finally, Oceaneering suggests that the Court require Aker to summarize and segregate their recoverable costs. Oceaneering argues that a downward adjustment is proper because Aker failed to perform the required allocation between the cost and expenses associated with its defense as to the claims of Chevron, the only claims for which it is entitled to recover attorneys' fees.

Aker, in its reply memorandum, first argues that Oceaneering's failure to raise any issues of contract interpretation with respect to Aker's claims for attorneys' fees should be construed as a waiver of the defense. Thus, Oceaneering should be estopped from raising any such argument in the future. Second, Aker argues that Oceaneering segregated time attributable

to Aker's pursuit of Oceaneering based upon rank retroactive speculation because it is impossible to determine with any reasonable degree of specificity how much of Aker's fees and expenses were attributable to pursuit of Oceaneering. Third, Aker contends that Oceaneering's claim that 50% of counsel's time was spent defending CAMC is unreasonable and unsupported by the record. Further, Aker argues that other factors indicate that 50% is an unreasonable allocation. For instance, issues related to Aker clearly predominated over the CAMC-related issues, as evidenced in the Pre-Trial Order (Rec. Doc. 390). Additionally, Aker contends that its use of three attorneys at trial was reasonable because this Court found Chevron's use of six attorneys at trial was appropriate. Aker reiterates that counsel did exercise billing judgment precisely by writing off unproductive, excessive, or redundant hours prior to submitting invoices to the client for payment. Finally, with regard to costs, Aker argues that Oceaneering must reimburse Aker for all such expenses. Oceaneering's contention that Aker failed to demonstrate that the submitted costs were necessarily obtained for use at trial ignores Aker's reliance upon Oceaneering's contract, which states that reimbursement is owed for any costs which are "directly or indirectly" related to claims for which Oceaneering must indemnify Aker. Further, Aker argues that it has

met its burden of proof with respect to reimbursable costs, by submitting the invoice listings of the expenses actually incurred by Aker, supporting documentation (as attached to each invoice) evidencing the expenses, and the affidavit of Laurence E. Best which states that each expense/cost was necessarily incurred in the defense of Aker.

In its Sur-Reply, Oceaneering again[2] argues that Aker failed to segregate fees and did not exercise the requisite billing judgment. Further, Oceaneering argues that the defense of CAMC consumed 50% of the time and litigation expenses submitted by Aker because (1) all claims asserted by Chevron against Oceaneering and CAMC were virtually identical, with Oceaneering being billed 3,383 hours by counsel to defend the claims asserted against it; (2) CAMC is a main defendant; and (3) 5% share of fault to CAMC was due to the vigorous defense mounted by counsel for Aker on behalf of CAMC. Further, Oceaneering suggests the Court order Aker to summarize and segregate its recoverable cost to determine what charges are reasonable, necessary or related to those claims for which Aker can recover.

---

[2]Ironically, Oceaneering's *Sur-reply* is concluded with a quote by Judge Beer stating that this lawsuit is "a classic example of [an] over complicated [sic], over paper worked [sic], over pleaded [sic], over briefed [sic] and over tried [sic]" case (Rec. Doc. 484, at 2, cited in Rec. Doc. 627, at 6).

**DISCUSSION:**

**Indemnity Demand**

The jury assigned Aker a 35% share of Chevron's damages which totaled $1,399,795.75, and a 5% share to CAMC which totaled $199,971.05 (Rec. Doc. 494). On this motion for indemnity, Aker argues that it is reasonable that CAMC paid to Chevron 90% of the $199,971.05 judgment against CAMC. However, Aker failed to provide any evidence in the record to establish the exact proportions of the settlement payment. In fact, Aker should have known the exact amount of settlement that Aker paid out of its own pockets. The Court finds Oceaneering's argument persuasive in that it is reasonable to estimate that CAMC paid 100% of the total damage award ($199,971.05) to settle the claims against it. This leaves $1,050,028.95 as Aker's responsibility to Chevron, for which Aker can now be indemnified ($199,971.05 subtracted from the $1,250,000.00 settlement with Chevron).

**Adjustment to the Lodestar**

In determining the amount of attorneys' fees to award, the Court calculates the "lodestar" figure by multiplying the number of reasonable hours expended times a reasonable rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Nisby v. Comm'rs Court of Jefferson Cnty., 798 F.2d 134, 136 (5th Cir.1986). After the lodestar figure is calculated, the court can adjust the figure

upward or downward based on factors articulated in Johnson, 488 F.2d at 717-19:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Court "must also consider, *inter alia,* 'whether the award is excessive in light of the plaintiff's overall level of success.' Moreover, the requested fees must bear a ' "reasonable relationship to the amount in controversy or to the complexity" ' of the circumstances of the case." Mid-Continent Cas. Co. V. Chevron Pipe Line Co., 205 F.3d 222, 232 (5th Cir. 2000) (citations omitted). The fee seeker is charged with the burden of showing the reasonableness of the hours billed and, accordingly, with proving that they exercised billing judgment. Leroy v.

Houston, 831 F.2d 576, 586 (5th Cir.1987) (citation omitted). With regard to hourly rates, the fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. Blum v. Stenson, 465 U.S. 886, 895 (1984). Aker cites cases in this District to establish that the rates of its counsel are substantially lower than the community's prevailing range. The Court agrees with Aker that the rate of $150.00 to $190.00 per hour charged by Aker's counsel is extremely reasonable and does not warrant any adjustment.

Similarly, the Court finds that the amount of hours claimed by Aker's counsel is also reasonable. Contrary to Oceaneering's assertions, the relevant contractual provision mandates Oceaneering to indemnify Aker for "all costs and attorneys' fees . . . resulting directly or indirectly from any and all loss . . . for which [Oceaneering] is obligated to indemnify [Aker]" (Rec. Doc. 616-7). Thus, it is not necessary to subtract any time Aker's counsel spent outside of their defense of Chevron's claims. Aker's litigation expenses and fees were incurred resulting "directly or indirectly" from Oceaneering's negligent performance of its contractual obligations and are recoverable.

Oceaneering urges the Court to reduce counsel's fees by 50% to reflect that about half of the time was dedicated to defense of CAMC. Aker alleges that Aker's counsel could not reasonably be expected to routinely segregate time between various claims or between particular defendants because the facts and issues in this case are sufficiently intertwined to allow for complete recovery of all amounts expended. Aker asserts that any work performed, which benefitted CAMC, was incidental and insignificant, and/or indistinguishable from work performed for Aker's benefit. It is not necessary to segregate fees when the facts and issues are so closely interwoven. Mota v. University of Texas Houston Health Science Center, 261 F.3d 512, 528 (5th Cir. 2001) (citing Abell v. Potomac Ins. Co., 946 F.2d 1160, 1169 (5th Cir. 1991)). Here, the issues were closely intertwined, and, hence, no segregation is required. Moreover, the defense of CAMC required significantly less than 50% of the time spent because, as is clear from the Pre-trial Order (Rec. Doc. 390), the defense of CAMC constituted only a small part of litigation. Because the Court finds that no segregation is required, Aker can recover the full amount of its fees and costs.

In conclusion, the complexity of this matter, counsel's expertise, the amount of money involved, and the results obtained all require this Court to award Aker the full amount of

attorneys' fees and costs claimed, without any downward adjustment.

Accordingly, **IT IS ORDERED** that Aker's **Motion for Indemnity, Attorneys' Fees and Costs (Rec. Doc. 616)** is **GRANTED in part**. Oceaneering's obligation to Aker is $1,050,028.95 in indemnity and $992,217.15 in attorneys' fees and costs. Accordingly, Aker's total award is $2,042,246.10.

New Orleans, Louisiana, this 17th day of March, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE